## HARKEY v. NEVILLE.

WILLS—FEE CONDITIONAL—TRUST DEED.—A will devising land to A for life, after her death to B, "for and during her natural life, and in case of death without issue," then over, under the act of 1853, cannot be construed to convey a fee conditional to B by implication, and B cannot convey a fee simple to herself by executing a deed to C, in trust for herself and her heirs, she then having a son alive, who has since died.

Before DANTZLER, J., Oconee, February, 1904. Reversed.

Action by Wm. C. Harvey, Thos. R. Colston, Miles Oswald Colston and Harry Edgar Colston against Louisa W. Neville and J. D. McMahon. From Circuit decree, plaintiffs appeal.

*Messrs. Jaynes & Shelor*, for appellants, cite: *Estate of Louisa W. is not a fee conditional:* Code, 1902, 2464; 10 S. C., 365; 16 S. C., 316; 23 S. C., 47; 2 Hill, 198; 4 Kent., 284; 1 McC., 79; Bail. Eq., 298; 3 Rich. Eq., 578; 1 Hill Ch., 282; 2 Hill Ch., 199; 4 Rich. Eq., 423; 1 Jarman on Wills, 65; 1 Russell, 262; 7 Rich. Eq., 358; 67 S. C., 307; 48 S. C., 440; 1 Jarman on Wills, 6th Am. ed., 553; 2 *Id.*, 460; 7 Rich. Eq., 407; 23 Wend. R., 513; Bail. Eq., 42; 16 S. C., 327; 4 Kent., 279; 1 McC. Ch., 60; 3 Strob. Eq., 222; 1 Hill, 282; 67 S. C., 130. *Attempted alienation will not defeat remaindermen:* 19 Ency., 428; 2 Black. Com., 310-313; Litt., secs. 595, 599, 611, 698; Co. Litt., 366, 367; 1 N. Y., 250; Dud. Eq., 120; 9 Ency., 98; 18 Stat., 430; 24 S. C., 455; 12 Ency., 525; 15 Ency., 1031, 1032.

*Mr. S. P. Dendy*, contra, cites: *An express estate for life may be enlarged into a fee conditional:* 2 Strob. Eq., 56; 2 Jarm. on Wills, 138; 2 DeS., 422; 2 Kent. Com., 17; 2 McC., 252; 1 Spear., 256; 4 Strob. Eq., 66; 2 Bay, 297; 1 McC. Ch., 9; 2 McC. Ch., 324; 1 Bail., 231; 1 Hill Ch., 276; 2 Hill Ch., 196; 1 Rich. Eq., 404; 2 Strob. Eq., 174; 7 Rich. Eq., 358; 2 McC., 66; 1 Rich. Eq., 404; 2 Bail. L., 231; 1 Hill Eq., 265; 9 Rich. Eq., 58; 1 Bail. Eq., 543; 1 Rich. Eq., 111; 65 S. C., 345; 1 Rich Eq., 411; 48 S. C., 44; 46 S. C., 262; 47 S. C., 294; 5 Rich. Eq., 441. *Trust deed imposing no duty on trustee, statute executes the use:* 52 S. C., 556; 32 S. C., 76; 29 S. C., 135. *At common law remaindermen might be barred by deed of feoffment and livery of seizin:* Rice, 459; 10 S. C., 376; 32 S. C., 72; 2 Black., 104; 4 Kent. Com., 26.

November 11, 1904.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    Louisa M. Neville, claiming to be the owner in fee simple of a tract of land containing 226 acres, situate in the County of Oconee, in the State of South Carolina, contracted with and sold to her codefendant, J. D. McMahon, all the pine timber trees standing on said tract of land, for twenty cents a cord, for her own use, benefit and behalf, and that the said defendant, J. D. McMahon, has proceeded with a force of hands to fell some thirty or forty cords of said pine timber trees standing on said lands, under the contract with said codefendant, Louisa M. Neville.    The plaintiffs deny that Mrs. Louisa M. Neville is the owner in fee simple of said 226 acres of land, but allege that she is only a life-tenant of the said tract of land. Both the plaintiffs and defendants claim, through the last will of one Robert Stribling, who departed this life on the day of May, 1877.    A preliminary injunction was granted by his Honor, Judge Dantzler, whereby the defendants were restrained from cutting any pine or other timber on said 226 acres of land.    The action was brought on for trial before Judge Dantzler, who decreed that the said defendant, Louisa M. Neville, was the owner in fee simple of said 226 acres of land, and, therefore, had the right to make her contract with her codefendant, J. D. McMahon; the plaintiffs complaint was dismissed.

The plaintiffs have appealed from said decree on the grounds:

"I. Because his Honor erred in finding as matters of fact as follows: 'After the death of the testator, his widow, Ruthy P. Stribling, died, and his daughter-in-law, Louisa M. Stribling, intermaried with one William J. Neville, and one child was born of that marriage; during the lifetime of such child, the said Louisa M. Neville, *nee* Stribling, alienated the real property described in said will and afterwards acquired title thereto, and now claims to own the

same in fee absolutely in her own right; whereas, the testator died in 1877 and the widow in 1902; that subsequently to the death of the testator, but more than eighteen years before the death of the widow, Louisa M. Stribling intermarried with William J. Neville; of this marriage, on June 2d, 1884, a son was born, who died on June the 6th, 1886; on June the 14th, 1884, Louisa M. Neville executed a deed to William J. Neville, as trustee, conveying her estate for the benefit of herself and her heirs; that William J. Neville died in June, 1899; that by reason of the trust deed aforesaid, Louisa M. Neville now claims to own in fee the tract of land described in said will absolutely, in her own right, and his Honor erred in not so finding.

"II. Because his Honor erred in his construction of the will of Robert Stribling, deceased, dated April the 28th, 1877, whereby he construed *Item IV*. as giving to Louisa M. Neville a fee conditional estate in the tract of land therein described; whereas, he should have held that she took only an estate for life under said will.

"III. Because the well settled rule of law in the construction of wills is, that the intention of the testator is to be obtained from his own words and not from words implied or supplied *de hors* the instrument; and his Honor erred in holding that Louisa M. Neville took a fee conditional estate by implication.

"IV. Because the express estates given by the will are (1st) Life estate to the widow; (2d) life estate to the daughter-in-law, and (3d) remainder in fee to niece and nephew upon the death of the daughter-in-law without issue living at the time of her death, and his Honor erred in not so holding.

"V. Because it is manifest from the language of the will, the intention of the testator was that, after the termination of the life estate given to the widow and daughter-in-law, the remainder in fee should be vested in the niece and nephew, in case of the death of the daughter-in-law without issue

living at the time of her death, and his Honor erred in not so holding.

"VI. Because a fee conditional occurs where an estate of freehold is limited to a person, and the same instrument contains a limitation by way of remainder of the same legal or equitable character to the heirs of his body or his issue, to whom upon his death the estate is to descend per *formam doni,* from generation to generation, until the line of descent becomes extinct, and his Honor erred in not so holding.

"VII. Because, in order to create a fee conditional, there must be either words of inheritance and procreation or words indicating an intention that the estate should pass indefinitely on the general or special line of the first taker, to one and the heirs of his body, is the proper and apt form of language to create such an estate, and his Honor erred in implying or supplying these words in the will of testator.

"VIII. Because, after the act approved December 24th, 1883, no estate in remainder, whether vested or contingent, could be defeated by a deed of feofment with livery of seizure, and his Honor erred in not so holding.

"IX. Because the deed purporting to have been made by Louisa M. Neville, on the 14th day of June, 1884, to William J. Neville, trustee, could not operate to defeat the estate in remainder of the niece and nephew in said premises, the act then declaring that no estate in remainder, whether vested or contingent, could be defeated in this manner, and his Honor erred in not so holding.

"X. Because the deed purporting to have been made by Louisa M. Neville to William J. Neville, trustee, was not such an alienation as at common law could operate to defeat an estate in remainder, the widow being in possession of the land, and remaining in possession thereof as life tenant until her death, in 1902, about seventeen years thereafter, William J. Neville never having possession of said premises; whereas, there must be both a deed and a corporal transfer of the soil from one to another, taking effect *in presenti,* or not at all, and his Honor erred in not so holding.

9—70.

"XI. Because the deed being made to W. J. Neville, as trustee, for the benefit of Louisa M. Neville, and her heirs, the trustee having nothing to do and not passing as feoffee into the actual enjoyment of the fee, it was as if Louisa M. Neville, the life tenant, had made a deed to herself and of her estate in the premises, and his Honor erred in not holding the same ineffectual to destroy the contingent remainder of the niece and nephew.

"XII. Because said deed on its face shows that Louisa M. Neville conveyed only the right, title, interest and estate which she took under the will of testator, after the termination of the life estate of the widow, Ruthy P. Stribling, of, in and to said premises; it was a conveyance to take effect *in future*, the interest thereby conveyed being the life estate of the grantor, after the termination of the life estate of the widow, Ruthy P. Stribling, which did not transpire until the widow's death, in 1902, four years after the death of the trustee, who never exercised any acts of ownership or dominion over said premises; and the execution of said deed does not constitute such alienation of a fee conditional estate as at common law operates to defeat the estate in remainder."

We will now address ourselves to these exceptions, and in doing so will first take up the second to the seventh, inclusive. Before entering into the discussion of the exceptions, it may be well to give some facts not disputed.

The testator, Robert W. Stribling, died in May, 1877, leaving a will. His family, at the time of his death, and for years before his death, were his wife, Mrs. Ruthy Stribling, his widowed daughter-in-law, Louisa M. Stribling, his nephew, William C. Harkey, and his niece, Susan E. Harkey. He had no children of his own. His wife was made by him his sole executrix. His will was as follows:

"1st. I desire my body to be decently interred in the earth from whence it came.

"2d. I desire all my just debts and funeral expenses to be paid as soon as practicable after my death.

"3d. It is my will and desire that my nephew, William C. Harkey, now living with me, provided he shall remain with me as in the past, if I shall so long live, or in case of my decease, with my wife, Ruthy P. Stribling, until he attains to the age of twenty-one years; then it is my will and desire that he, my nephew, the said William C. Harkey, shall have one good horse, bridle and saddle, and the sum of fifty dollars in money.

"4th. The tract of land whereon I now live, situate, lying and being in the county of Oconee and State aforesaid, on Conneross Creek, waters of Seneca River, and adjoining lands of E. S. Foster, W. T. Jaynes, L. D. Stribling, A. G. Sligh and others, containing two hundred and twenty-six acres, more or less, and also all other real estate that I may be seized and possessed of at my decease, together with all the residue of my personal estate, after the payment of my just debts, funeral expenses and legacy as above directed, I will, bequeath and devise to my beloved wife, Ruthy P. Stribling, for and during the period of her natural life, for the joint use of herself and my daughter-in-law, Louisa M. Stribling, giving unto my said wife full power to sell and dispose of such parts of my personal property as may be required for her comfortable support and maintenance during her life, and from, upon and immediately after her death, I will, bequeath and devise all my said estate, both real and personal, unto my affectionate daughter-in-law, Louisa M. Stribling, widow of my son, Robert B. Stribling, deceased, for and during her natural life, and, in case of her death without issue, then one-third of my estate in fee unto my nephew, the said William C. Harkey, and his heirs forever, and the remaining two-thirds thereof in fee to my niece, Susan E. Harkey, and her heirs forever.

"5th. I do hereby nominate, constitute and appoint Ruthy P. Stribling sole executrix of this, my last will and testament.

"Witness my hand and seal, this 28th day of April, A. D. 1877.                    ROBERT STRIBLING, (L. S.)"

Testator's widow, Mrs. Ruthy P. Stribling, caused the will to be admitted to probate, qualified as sole executrix thereof, and possessed herself of the testator's lands and personal property. The daughter-in-law, Mrs. Louisa M. Stribling, lived with her mother-in-law, until she married one William J. Neville. On the 2d June, 1884, she gave birth to a son. On the 14th day of June, 1884, she executed a deed of said lands (226 acres) to William J. Neville, as trustee, The following is a copy of said deed, to wit:

"The State of South Carolina: Know all men by these presents: That I, Louisa M. Neville, of the county of Oconee and State aforesaid, for and in consideration of the natural love and affection which I have and bear to my husband, William J. Neville, and my son, Robert D. Neville, and for the further consideration of five dollars to be paid by the said William J. Neville, of said county and. State, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release, unto the said William J. Neville, all my right, title, interest and estate which I have by virtue of the will of Robert Stribling, late of the county and State aforesaid, after the determination of the life estate to Ruthy P. Stribling, the widow of the said testator, of and to the following real estate, that is to say, in all that piece, parcel or tract of land, situate, lying and being in the county of Oconee and State aforesaid, on Conneross Creek, waters of Seneca River, adjoining lands of E. S. Foster, W. T. Jaynes, L. D. Stribling, A. G. Sligh and others, containing two hundred acres, more or less, being the real estate mentioned and described in the will of said Robert Stribling, deceased. Together with all and singular the rights, members, hereditaments and appurtenances to the said premises belonging or in any wise incident or appertaining.

"To have and to hold all and singular the premises hereinbefore mentioned unto the said William J. Neville, his heirs and assigns forever; *in trust,* nevertheless, for the use, benefit and behoof of myself and my heirs forever. And I

hereby bind myself, my heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said William J. Neville, his heirs and assigns, against me and my heirs, and all and every other person or persons whomsoever lawfully claiming or to claim the same or any part thereof."

On the        day of June, 1884, the son of Mrs. Louisa M. Neville died.   She has never borne any other child or children, and is now sixty-three years of age.   Mrs. Ruthy P. Stribling died in the year 1902, and thereupon Mrs. Louisa M. Neville occupied the said plantation.   This suit was begun in 1903.   Testator's niece, Miss Susan E. Harkey, intermarried with one Thomas R. Colston.   Of this marriage, Miles Oswald Colston and Henry Edgar Colston were born, and Mrs. Susan E. Colston, *nee* Harkey, died, leaving her husband and two sons, her heirs at law.   William J. Neville died in 1899.   The contest here involves the construction of the 4th clause of Robert Stribling's will.   By said clause a life estate is first carved out for the widow, Mrs. Ruthy P. Stribling; this life estate ended in 1902, on the death of the first life tenant.   Next a life estate for Mrs. Louisa M. Neville, which life tenant is still alive and in possession.

Did the birth of the issue to Mrs. Louisa M. Neville in 1884, clothe her with a fee conditional in said lands, so as to enable her to convey said lands, on 14th June, 1884, to a trustee for herself and her heirs, and thereby invest her with the fee simple estate in said lands?   It is very clear that the testator did not directly convey any estate in said lands to the son of Mrs. Louisa M. Neville.   Did the testator *by implication* create a fee conditional?   We know that there has been some confusion in the law of the State touching a fee conditional *by implication*.   See the cases of *Buist* v. *Dawes,* 4 Rich. Eq., 423, and *Addison* v. *Addison,* 9 Rich. Eq., 58.   In one of those cases the court of errors held that a fee conditional "is such an estate as is to descend indefinitely in the line of the first taker."   Such is the idea of

law writers; but what is meant by a fee conditional by im-
plication, is such a disposition by a testator when his inten-
tion of a devise to the issue is necessary in order to make
sense.   As an example, in the case of *Addison* v. *Addison,*
*supra,* when the language of the testator, Allen B. Addison,
was, "I give in trust to George A. Addison and Dr. Edward
J. Mims, for the sole benefit of my son, Joseph A. Addison,
during his natural life, the following property, that is: my
mill place, on Shaw's Creek, &c., &c.   But if my said son,
Joseph A. Addison, should die without leaving any child
or children, or representatives of child or children, in that
case my will is, that the above property be equally divided
between by son, George A. Addison, and my daughter, Eme-
line C. Mims, or their children * * *" J. A. Addison had a
son born after the death of testator, which son survived said
J. A. Addison.   It was held by the Court, "that J. A. took
an estate in fee conditional in the realty *by implication,*
which descended to his son * * *" In order to do this, it was
necessary to hold that the language of testator implied a
greater estate in J. A. Addison than the actual devise, which
was for life, and that although there was no direct devise
to the issue of J. A., yet that was what was *meant* by the
testator as fixed by the language used.   It must be remem-
bered in this connection that the testator, Allen B. Addison,
died in May, 1850, which was three years before the Gen-
eral Assembly of this State enacted the following statute,
to wit: Sec. 2464 of Civil Code of South Carolina: "When-
ever in any deed or other instrument in writing, not testa-
mentary, hereafter executed, or in any will of a testator
hereafter dying, an estate, either in real or personal prop-
erty, shall be limited to take effect on the death of any person
without heirs of the body, or issue, or issue of the body, or
other equivalent words, such words shall not be construed
to mean an indefinite failure of issue, but a failure at the
time of the death of such person." Thus, in the 4th clause
of the will of Robert P. Stribling, the act of 1853, just
quoted, will be read after the life estate of Mrs. Ruthy P.

Stribling, as follows: "For and during her natural life, and in case of her death without issue *living at the time of her death,* then one-third of my estate in fee unto my nephew, William C. Harkey, and his heirs forever, and the remaining two-thirds thereof in fee to my niece, Susan E. Harkey, and her heirs forever."

We feel that the testator was obliged under the law to mean in his will a life estate to Louisa M. Neville, unless her issue should be living at her death; in which event, the issue of her body then living would receive the estate, and the nephew and niece, William and Susan, would not take any part of the estate; for, as the law would *by implication* supply "issue" to the life tenant, it would be such issue as would survive the life tenant, Lucy M. Neville, whose only child or issue died in the year 1884, and she is now too old and infirm to bear other issue.

But suppose effect could be given to the deed the said Lucy M. Neville made in 1884 to her husband, William J. Neville, of said tract of land. It must be plain that such effort on the part of the said Lucy M. Neville to change her relation to the estate in said lands was utterly futile, not because W. J. Neville was her husband, but because she could not change her relation to that land by making a deed to herself. It is true, she used the name of a trustee in her deed, but she placed the performance of no duties upon such trustee; he was merely to hold such property for Lucy M. Neville and her heirs. It was well said by the late Chief Justice McIver, in *Faber* v. *Police,* 10 S. C., at page 389, in discussing the same question, "The rule undoubtedly is, that when there is a conveyance to one for the use of another, and the trustee is charged with no duty which renders it necessary that the legal estate should remain in him to enable him properly to perform such duty, the statute of uses executes the use and carries the legal title to the *cestui que use. Ramsey* v. *March,* 2 McC., 252; *Laurens* v. *Janny,* 1 Spear, 356; *McNish* v. *Guerrard,* 4 Strob. Eq., 66." Whatever estate Louisa M. Neville conveyed to W. J. Nev-

ille *in trust* for her, was her legal estate. By the law, the trustee having no duty to perform, the legal estate, *eo in-stanti,* was carried back to the said Louisa M. Neville. Such being the case, there was an entire failure on her part to effect the title. It might be said that Lucy M. Neville so considers her effort to convey the title as futile, for she now treats the same land as under no trust.

It follows, therefore, that the decree of the Circuit Court must be reversed; for if Lucy M. Neville has only a life estate in the tract of land, she has no right to allow her co-defendant to fell the timber on said 226 acres of land, and that, after her death, the said 226 acres of land will revert to the plaintiffs.

It is the judgment of this Court, that the judgment of the Circuit Court be and the same is hereby reversed, and the action is remanded to the Circuit Court to carry this judgment into effect.

MESSRS. JUSTICES JONES and WOODS *concur in the result.*

MR. JUSTICE GARY, *concurring.* The will must be construed as if the testator had inserted in it the provisions of the act of 1853, set out in the opinion of Mr. Chief Justice Pope. The limitation over after the life estate of Mrs. Louisa M. Neville should read as follows: "and in case of her death without issue living at the time of her death, then, &c."

If this controversy had arisen under a will which became effective prior to the act of 1853, the case of *Addison* v. *Addison,* 9 Rich. Eq., 58, shows that the language of the will would have been sufficient to create an estate in fee conditional by implication. But the Court in the case just cited recognized the principle that words equivalent to those mentioned in the statute would prevent the life estate from being enlarged into a fee conditional by implication. In that case the Court says: "It follows, that if in this litigation we must construe the words of the will, describing the

event on which the estate was to go over, as equivalent to dying without issue living at the death of Joseph, his life estate cannot be enlarged by implication." The words of the will, which would have been sufficient to create a fee conditional by implication, are restricted by the words, "living at the time of her death," which prevent the vesting of such an estate in the life tenant, as they show that it was not the intention of the testator that the issue should take in indefinite succession, which is a prerequisite for the implication of a fee conditional. Since the act of 1853, we do not see how a life estate can be enlarged into a fee conditional by implication.

In his opinion, Mr. Chief Justice Pope says: "We feel that the testator was obliged under the law to mean in his will, a life estate to Louisa M. Neville, unless her issue should be living at her death, *in which event the issue of her body then living would receive. the estate,* and the nephew and niece, William and Susan, would not take" (italics ours). We cannot concur in this proposition, as the principle is stated by numerous authorities in this State, that issue cannot take as *purchasers* by implication.

For these reasons, we concur in the conclusion announced in the leading opinion, that the judgment of the Circuit Court should be reversed.